**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

KIM MARIE REAM,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

No. 2:25-CV-1863-DAD-ICD

FINDINGS AND RECOMMENDATIONS

Plaintiff brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pending before the Court are the parties' cross-motions for summary judgment. ECF Nos. 9, 11, 12. For the reasons discussed below, the undersigned recommends that Plaintiff's motion for summary judgment be denied and Defendant's cross-motion be granted.

The Court reviews the Commissioner's final decision to determine whether it is based on proper legal standards and supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 587 U.S. 97, 103 (2019) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). The record, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The Court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence

supports the administrative findings, or if conflicting evidence supports a particular finding, the Commissioner's finding is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229–30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed. See Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). The decision may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## I. THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520(a)–(g) and 416.920(a)–(g). The sequential evaluation proceeds as follows:

- Step 1: Determine whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled, and the claim is denied.
- Step 2: If the claimant is not engaged in substantial gainful activity, determine whether the claimant has a severe impairment; if not, the claimant is presumed not disabled, and the claim is denied.
- Step 3: If the claimant has one or more severe impairments, determine whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled, and the claim is granted.
- Step 4: If the claimant's impairment is not listed in the regulations, determine whether the impairment prevents the claimant from performing past work considering the claimant's residual functional capacity; if not, the claimant is presumed not disabled, and the claim is denied.
- Step 5: If the impairment prevents the claimant from performing past work, determine whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled, and the claim is denied.

See 20 C.F.R. §§ 404.1520(a)–(g) and 416.920(a)–(g).

To qualify for benefits, the claimant must establish an inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, for a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity that the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th Cir. 1989).

The claimant bears the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990). The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden shifts to the Commissioner to show that the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d at 1340; Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 879 F.2d at 501.

## II. THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on August 19, 2022. See CAR 22.[1] In the application, Plaintiff claims disability began on November 8, 2018. See id. Plaintiff's claim was initially denied. Following denial of reconsideration, Plaintiff requested an administrative hearing, which was held on June 13, 2024, before an Administrative Law Judge (ALJ).

On July 22, 2024, the ALJ issued an unfavorable decision finding that Claimant Kim Marie Ream was not disabled under sections 216(i) and 223(d) of the Social Security Act. The relevant adjudicated period runs from June 11, 2020 (the day following a prior application

---

[1] Citations are the to the Certified Administrative Record (CAR) lodged on August 28, 2025, ECF No. 8.

reconsideration denial) through September 30, 2020, Claimant's date last insured (DLI). See CAR 19, 22.

The ALJ applied the five-step sequential evaluation process and made the following determinations relevant to Plaintiff's challenges:

1. Through the DLI of September 30, 2020, the claimant had the following severe impairment(s): left knee status post meniscectomy; plantar fasciitis; lumbar degenerative disc disorder; obesity; obstructive sleep apnea; bipolar disorder; anxiety disorder; and post-traumatic stress disorder (PTSD);

2. Through the DLI, the claimant did not have an impairment or combination of impairments that met or medically equaled an impairment listed in the regulations;

3. Through the DLI, the claimant had the following residual functional capacity: the claimant could perform light work; she could walk and stand for four hours in an eight-hour workday; she could occasionally perform postural activities, but not climb ladders, ropes, scaffolds, and she could not be exposed to hazards; the claimant could understand, remember, and carry out simple instructions; the claimant could have occasional interactions and occasionally changes in the work environment;

4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert (VE) testimony, there were jobs that existed in significant numbers in the national economy that the claimant could have performed through the DLI such as office helper and parking lot attendant.

CAR 22-35.

After the Appeals Council declined review on May 9, 2025, this appeal followed. CAR 1-4.

## III. DISCUSSION

In her opening brief, Plaintiff argues: (1) the ALJ failed to provide sufficient reasons for discounting Plaintiff's subjective statements and testimony regarding mental and physical dysfunction; (2) the ALJ failed to properly evaluate medical opinions offered by Drs. Meekins, Taetzsch, and nurse practitioner Mason; and (3) the ALJ failed to resolve apparent inconsistencies between the VE's testimony and the definitions contained in the Dictionary of Occupational Titles (DOT). See ECF No. 9.

///

**A. Plaintiff's Subjective Statements and Testimony**

Plaintiff maintains the ALJ failed to provide sufficient reasons for discounting Plaintiff's subjective statements and testimony regarding mental and physical dysfunction. ECF No. 9 at 7-14.

The Commissioner determines the weight to be given to a claimant's own statements and testimony, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not afforded weight and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007), and Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at

345-47. In weighing a claimant's statements and testimony, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Regarding reliance on a claimant's daily activities to discount testimony of disabling pain, the Social Security Act does not require that disability claimants be utterly incapacitated. See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989). The Ninth Circuit has repeatedly held that the ". . . mere fact that a plaintiff has carried out certain daily activities . . . does not . . . [necessarily] detract from her credibility as to her overall disability." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1450). Daily activities must be such that they show that the claimant is ". . . able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Fair, 885 F.2d at 603. The ALJ must make specific findings in this regard before relying on daily activities to discount a claimant's pain testimony. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

The ALJ evaluated Plaintiff's subjective statements and testimony at Step 4, first providing the following summary:

> At the hearing, the claimant testified that she is not currently working and that she began to experience back pain in 2020. She stated that she can stand for five minutes and that she experiences back and left knee pain. The claimant testified that she experiences mood swings and has difficulties dealing with others. She stated that her concentration and

> memory were not good. She stated that she began to decompensate in Wal-Mart because there were too many people in the store. She testified that she would not be able to work because her attendance would not be customary. She stated that being [a]round others is stressful.
>
> The claimant testified that she would experience absences two days a week. She stated that she left early two to four days a week. The claimant stated that she would be off task at least one hour out of an eight-hour workday. She stated that in 2020 and since she has to lie down twice per week. The claimant stated that she has to elevate her legs. The claimant takes breaks with chores and has more bad days. She stated that she sleeps four hours and becomes more fatigued. The claimant stated that she takes four naps a week. She has difficulties with walking long distance, bending over, and kneeling. The claimant stated she endorses left leg swelling and her pain subsided. The claimant stated that she experiences migraine headaches twice a week. She testified that her pain and anxiety had become worse. The claimant stated that she experiences neck and left arm pain since 2020. The claimant stated that she experiences left arm pain once a month. She stated that she becomes short of breath.
>
> CAR 27.

The ALJ concluded that Plaintiff's subjective statements and testimony "are not entirely consistent with the medical evidence. . .." Id. The ALJ then provided the following analysis:

> Regarding the claimant's obstructive sleep apnea, the record revealed that on February 12, 2021, a polysomnogram revealed severe complex (obstructive and central) sleep apnea, severe obesity hypoventilation syndrome, and CPAP/BiPAP failure (Exhibit B15F, page 83).
>
> Regarding the claimant's mental impairments, the record also revealed that the claimant's mental impairments were not as severe as alleged. The claimant did not require inpatient hospitalization nor did the claimant require significant outpatient treatment. Moreover, the record revealed that the claimant denied feeling depressed but felt overwhelmed. She denied medication side effects. Her affect was full, and her form of thought was linear and coherent. Her attention and concentration were normal. She demonstrated good insight and judgment (Exhibit B16F, page 11). On November 13, 2020, the claimant presented with a full affect and her form of thought was linear and coherent. Her attention and concentration were within normal limits (Exhibit B16F, page 14).
>
> CAR 28-29.

Finally, the ALJ commented as follows on Plaintiff's activities of daily living:

> The claimant's activities of daily living were self-restricted and not as limiting as alleged by the claimant. Specifically, the claimant's function report revealed that the claimant could generally attend to her activities of daily living. The claimant prepared meals, performed household chores (i.e., laundry and emptied the trash), shopped in stores, and spent time with others (i.e., texting and in person). The claimant could follow written instructions, but not spoken instructions (Exhibit B4E). In December 2020, a few months after the DLI, she was riding her stationary bike miles per week. B16F. Overall, these

> activities when viewed in conjunction with the claimant's allegations of pain and dysfunction, belies the persuasiveness of the claimant's allegations. Hence, my determination that the claimant can perform a limited range of light work is fully supported by the medical record and the claimant's activities of daily living. The undersigned, therefore, notes that the abovementioned testimony is not fully persuasive.

CAR 29.

In her brief, Plaintiff challenges these findings, arguing that the ALJ failed to provide specific, clear, and convincing justifications. Regarding her mental claims, Plaintiff challenges the ALJ's focus on the lack of inpatient care and two isolated normal examinations from late 2020 (CAR 1088, 1091), asserting this cherry-picked analysis minimized a documented record of panic attacks, extensive crying during therapy, and complex grief (CAR 589, 718, 827, 1099, 1104). Physically, Plaintiff challenges the assertion that her condition was conservative or inconsistent with disabling pain, noting she underwent left knee meniscus surgery in March 2020, required serial foot cortisone injections, and routinely took narcotic pain medication (CAR 421, 598, 766, 1025).

However, the Court finds the ALJ's interpretation of the subjective evidence is supported by more than a scintilla of evidence. While Plaintiff identifies instances of acute mental stress, the ALJ pointed to objective clinical parameters from the weeks closely matching the DLI where her memory, cognitive focus, attention, and executive judgment remained stable, intact, and linear (CAR 1088, 1091). Physically, during the exact four-month adjudicated period, Plaintiff's ongoing lumbar spine complaints were treated via non-invasive home modalities—including cold and warm compresses, structured stretching routines, and regular exercise (CAR 957–958). Furthermore, Plaintiff's active functional report confirmed she remained capable of driving, completing localized shopping runs, executing basic laundry, and independently handling financial transactions (CAR 287–291). Under the controlling standard of review, where the administrative record permits more than one rational interpretation, the Court must uphold the ALJ's path. Thomas, 278 F.3d at 954. The ALJ adequately addressed the conflict and provided legally valid reasons to discount the total extent of Plaintiff's subjective limitations.

///

**B. Medical Opinions**

For claims filed on or after March 27, 2017, the regulations explicitly govern how the Commissioner evaluates medical opinion evidence. Under 20 C.F.R. § 404.1502(a)(7)-(8), acceptable medical sources include licensed advanced practice registered nurses (such as Nurse Practitioners) and licensed physician assistants acting within their scope. Accordingly, the medical source hierarchy of the prior "treating physician rule" is eliminated, and the ALJ is "not required to defer to or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 404.1520c(a).

Instead, the ALJ evaluates all medical opinions based on their "persuasiveness." 20 C.F.R. § 404.1520c(b). The two most important factors for this assessment are supportability and consistency, and the ALJ is statutorily required to explain how both factors were considered. 20 C.F.R. § 404.1520c(b)(2); Woods v. Kijakazi, 32 F.4th 785, 792 (9th Cir. 2022). For supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support their opinion, the more persuasive it will be. 20 C.F.R. § 404.1520c(c)(1). For consistency, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources in the claim, the more persuasive it will be. 20 C.F.R. § 404.1520c(c)(2).

At Step 4, the ALJ evaluated the medical opinions of record. Plaintiff challenges the ALJ's analysis as to Drs. Meekins and Taetzsch, and nurse practitioner (NP) Mason. See ECF No. 9 at 14-20.

1. Dr. Meekins and NP Mason

In January 2020, NP Lori Mason and psychiatrist Dr. Kirk Meekins completed a short-form mental functionality questionnaire checking boxes asserting that Plaintiff possessed a "poor ability" (defined as no useful ability to perform or sustain an activity) across multiple spheres of competitive functioning, including understanding complex instructions, completing normal workdays without interruption, maintaining standard attendance, and interacting with coworkers or supervisors (CAR 729–732). The ALJ discounted this statement as unpersuasive.

Plaintiff alleges that the ALJ committed legal error by applying generalized references to vast exhibit files without tracking specific internal inconsistencies. ECF No. 9 at 14-17. However, under the 2017 revised regulations, the ALJ explicitly explained how the consistency and supportability metrics were evaluated. The extreme parameters listed within the checklist were found unsupported by Ms. Mason's own contemporaneous internal treating notes from that exact timeframe, which demonstrated that Plaintiff was reporting significant stabilizing improvements under her active Depakote regimen (CAR 733). Moreover, the ALJ properly observed that a check-form indicating zero capability to tolerate basic interactions or schedules directly conflicted with the extensive daily home activities Plaintiff confirmed she executed independently, such as regular driving, meal prep, and store shopping (CAR 287–291). The ALJ's supportability and consistency findings are supported by the record.

2. Dr. Taetzsch

In April 2024, psychologist Dr. William Taetzsch completed a medical functionality questionnaire declaring that Plaintiff was entirely unable to meet competitive workplace standards regarding memory, maintaining focus in two-hour standard blocks, or enduring typical supervision, asserting that these boundaries operated retrospectively back to November 2018 (CAR 2034–2038). The ALJ discounted Dr. Taetzsch's opinion as unpersuasive.

Plaintiff challenges this determination, noting that retrospective assessments are valid under Ninth Circuit law and that Dr. Taetzsch, as an analyst at her treating center, possessed direct structural access to her longitudinal medical charts. ECF No. 18-20. Although retrospective medical determinations can be persuasive under certain parameters, the ALJ's supportability analysis pointed out that Dr. Taetzsch did not commence a firsthand personal examination or treating relationship with Plaintiff until October 2022—more than two years after her Title II insured status completely expired (CAR 30, 2034). The ALJ rationally concluded that Dr. Taetzsch's retrospective findings were unsupported by pre-DLI firsthand clinical data and stood in sharp friction to the intact cognitive examinations, linear thought flows, and normal focus capabilities recorded by her active clinicians close to the DLI in late 2020 (CAR 1088, 1091). The ALJ properly executed his statutory duties under 20 C.F.R. § 404.1520c.

**C. Vocational Findings**

The Medical-Vocational Guidelines (Grids) provide a uniform conclusion about disability for various combinations of age, education, previous work experience, and residual functional capacity. See Heckler v. Campbell, 461 U.S. 458, 460-62 (1983). The Commissioner generally may not rely on the Grids if a claimant suffers from non-exertional limitations because the Grids are based on exertional strength factors only. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(b). If a claimant has combined exertional and non-exertional limitations, the Commissioner may rely on the Grids only if the non-exertional limitations do not impact the claimant's exertional capabilities. See Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990).

In cases where the Grids are not fully applicable because the plaintiff has sufficient non-exertional limitations, the ALJ is required to obtain VE testimony. See Burkhart v. Bowen, 856 F.2d 1335, 1341 (9th Cir. 1988). Hypothetical questions posed to a VE must set out all the substantial, supported limitations and restrictions of the particular claimant. See Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989). While the ALJ may pose to the expert a range of hypothetical questions based on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by substantial evidence in the record as a whole. See Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

In her brief, Plaintiff argues that the ALJ committed legal error at Step 5 by failing to identify and resolve conflicts between the VE's live testimony and the text definitions in the DOT under SSR 00-4p. ECF No. 9 at 20-22. Specifically, Plaintiff contends that an individual limited to "occasional social interaction" cannot legally meet the public and team communication patterns built into the job summaries for an office helper or a parking lot attendant. Id. Furthermore, Plaintiff argues that a person restricted from standing or walking more than four hours per shift cannot execute jobs defined by the DOT as light exertional work, which typically assume an individual can stand/walk up to six hours out of a shift. Id.

The Court finds that the ALJ properly handled these administrative friction points. Review of the vocational transcript confirms that the VE did not blindly cross-reference the jobs but explicitly accounted for Plaintiff's exact boundaries by modifying the occupational bases (CAR

60–61). To address the social interaction constraints, the VE explicitly excluded any busy municipal or public parking facilities that require persistent face-to-face transactions, eroding the parking lot attendant job pool down to approximately 50,000 isolated lots (CAR 60–61).

Regarding the four-hour walking limitation, the VE detailed that the office helper classification includes positions that possess a static workstation, allowing for a structured sitting and standing split, reducing the available positions nationally to approximately 175,000 available roles (CAR 60–61). Because the VE explicitly relied on personal professional field experience and independent job analysis audits to reconcile this layout, the ALJ's reliance on the VE's step-five findings satisfies the substantial evidence threshold.

## IV. CONCLUSION

Based on the foregoing, the undersigned recommends that:

1. Plaintiff's motion for summary judgment (ECF No. 9) be denied;
2. Defendant's cross-motion for summary judgment (ECF No. 11) be granted; and
3. the Commissioner's final decision be affirmed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **14 days** after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within **14 days** after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: October 13, 2026

ILA C. DEISS
UNITED STATES MAGISTRATE JUDGE